UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
LUIS ANTONIO ORTIZ,

                               Plaintiff,                      **REPORT AND**
                                                             **RECOMMENDATION**

        -against-

                                                             **17-CV-7095 (RRM)**

RED HOOK DELI AND GROCERY 2015
CORP. d/b/a RED HOOK GOURMET DELI,
SALAL SAHID, WESSEIN SAHID,
JOHN DOE 1, and JOHN DOE 2,

                               Defendants.
-----------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

         In this wage-and-hour action, plaintiff Luis Antonio Ortiz ("Ortiz" or "plaintiff") sues

his former employers, defendants Red Hook Deli and Grocery 2015 Corp., doing business as

Red Hook Gourmet Deli ("Red Hook"); Salal Sahid; Wessein Sahid; and John Doe 1 and John

Doe 2 (collectively "defendants"), to recover for deficiencies in the wages he was paid and

related damages.   See generally Complaint (Dec. 06, 2017) ("Compl."), Electronic Case

Filing ("ECF") Docket Entry ("DE") #1; see also First Amended Complaint (Dec. 07, 2017)

("FAC"), DE #5.   Currently pending before this Court, on a referral from the Honorable

Roslynn R. Mauskopf, is plaintiff's motion for default judgment.   See Motion for Default

Judgment (May 14, 2018) ("Pl. Mot."), DE #16; Order Referring Motion (Jan. 15, 2019).

         For the reasons that follow, this Court recommends that the District Court (1) *sua*

*sponte* dismiss the Third Cause of Action and all claims against defendants Wessein Sahid,

John Doe 1 and John Doe 2; and (2) grant a default judgment against defendants Red Hook and

Salal Sahid, jointly and severally, in the amount of $44,352.50, consisting of $15,360 in

unpaid overtime wages, $15,360 in liquidated damages, $10,000 in statutory damages, $3,232.50 in attorney's fees, and $400 in costs.

## BACKGROUND[1]

Plaintiff initiated this action on December 6, 2017.  See Compl.  Then, one day later, plaintiff filed his FAC, seeking damages from defendants, see FAC ¶¶ 5-9, for their failure to pay overtime wages pursuant the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 650 *et seq.* ("NYLL"); violations of New York's spread-of-hours provision, see N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6; and failure to provide wage notices and statements under the NYLL's Wage Theft Prevention Act ("WTPA"), see N.Y. Lab. Law §§ 195(1)(a), 195(3).

On January 18, 2018, plaintiff served the corporate defendant through the New York Secretary of State, see Affidavit of Service (Jan. 25, 2018) ("Corp. Aff. of Service"), DE #7, and purported to serve the four individual defendants, including the two John Does, by leaving copies of the summons and Complaint with defendant Salal Sahid at Red Hook's principal place of business—66 Lorraine Street, Brooklyn, New York 11231.  See Affidavits of Service (Jan. 18, 2018), DE #8, #9, #10, #11.

Following defendants' failure to timely respond to the FAC, plaintiff requested that certificates of default be entered against all five defendants, see Request for Certificate of Default (Apr. 9, 2018), DE #12, and the Clerk of the Court entered notations of default against

---

[1]  The facts referenced herein are primarily derived from plaintiff's First Amended Complaint ("FAC"), which, by defaulting, the properly served defendants have not controverted.

the three identified defendants, Red Hook, Salal Sahid, and Wessein Sahid, <u>see</u> Clerk's Entry

of Default (Apr. 19, 2018), DE #14.   Plaintiff moved for default judgment on May 14, 2018.

<u>See</u> Pl. Mot.

The FAC alleges that plaintiff worked for Red Hook, a deli located at 66 Lorraine

Street in Brooklyn.   <u>See</u> FAC ¶¶ 1, 2, 32.   The individual defendants are alleged to be

"owners, managers, principals, or agents of [Red Hook] and, through this corporate entity,

operate . . . the deli as a joint or unified enterprise."   <u>Id.</u> ¶ 3.

Plaintiff was a deli worker at Red Hook from around August 22, 2016 until around

October 25, 2017.   <u>See id.</u> ¶¶ 14, 34.   From approximately August 22, 2016 until around

August 2017, plaintiff worked seven days per week, without a break, from 12:00 p.m. until

12:00 a.m., for a total of twelve hours per day.[2]   <u>See id.</u> ¶¶ 39, 46.   During this period,

plaintiff was paid a fixed salary of $1,008 per week in cash, representing $12 per scheduled

hour.   <u>See id.</u> ¶ 42.   Then, from approximately September 2017 until on or around October

25, 2017, plaintiff worked from 3:00 p.m. until about 12:00 a.m., without a break, seven days

per week, for a total of nine hours per day.   <u>See id.</u> ¶¶ 40, 46.   During this period, plaintiff

was paid a fixed salary of $756 per week in cash, representing $12 per scheduled hour.   <u>See</u>

<u>id.</u> ¶ 43.

---

[2]   The Court notes a minor discrepancy in plaintiff's allegations regarding the dates of the first
phase of his employment with Red Hook.   <u>Compare</u> FAC ¶ 39 (alleging that plaintiff worked
twelve hours per day from "approximately August 22, 2016 until on or about August 2017")
<u>with</u> <u>id.</u> ¶ 42 (describing that period as "approximately August 2016 until on or about August
22, 2017"); <u>see also</u> Damages Chart (attached as Ex. J to Declaration in Support of Plaintiff's
Motion for Default Judgment (May 14, 2018) ("Damages Chart") at 1, DE #17-10 (assumes
that plaintiff worked twelve hours per day from August 22, 2016 through August 31, 2017).

Plaintiff claims that he is owed overtime wages under both the FLSA and NYLL, see id. ¶¶ 65, 69; see also Plaintiffs' [sic] Memorandum of Law in Support of a Motion for Default Judgment (Feb. 11, 2018) ("Pl. Mem.") at 6-8, DE #21.   Plaintiff also alleges that defendants failed to provide him with any wage notices or statements, in violation of the NYLL's WTPA, and failed to pay him under New York's spread-of-hours provision.   See FAC ¶¶ 73, 77, 80; see also Pl. Mem. at 8-10.   He does not allege minimum wage violations under either the FLSA or NYLL.[3]

Following Judge Mauskopf's referral of the motion for default judgment to the undersigned magistrate judge, this Court directed plaintiff to cure enumerated deficiencies in his application for default judgment.   See Order to Show Cause (Jan. 28, 2019) ("1/28/19 OTSC"), DE #19.   In that same Order, this Court gave defendants until February 25, 2019, to show cause why plaintiff's application for default judgment should not be granted.   See id. Plaintiff served the 1/28/19 OTSC on defendants by mailing copies, via first-class mail, to defendants' principal place of business—66 Lorraine Street, Brooklyn, New York.   See Affidavit of Service, DE #20.   In response to the 1/28/19 OTSC, plaintiff filed a supplemental declaration, stating that he was "never paid an additional hour of pay or any kind of extra pay when [he] worked over 10 hours in a single day."   Declaration of Luis Antonio Ortiz (Feb. 11, 2019) ("2/11/19 Ortiz Decl.") ¶ 6, DE #22.   Also in response, plaintiff filed his Memorandum in Support on February 11, 2019.   See Pl. Mem.

---

[3]  Plaintiff's regular hourly rate of $12.00 exceeded the applicable minimum wage rate under both the FLSA and NYLL.   See infra p. 13 n.6.

4

Thereafter, on May 13, 2019, this Court ordered plaintiff to show cause why his claims against defendant Wessein Sahid should not be dismissed for insufficient service of process. See Order to Show Cause (May 13, 2019) ("5/13/19 OTSC"), DE #25.   In response to the 5/13/19 OTSC, plaintiff moved for additional time to properly serve defendant Wessein Sahid, and this Court granted him leave to so serve that defendant until May 31, 2019 and to file proof of such service via ECF.   See Letter Request (May 15, 2019), DE #27; see also Order (May 16, 2019).   As of the date of this Report and Recommendation, plaintiff has not submitted proof of proper service on defendant Wessein Sahid.

Defendants did not respond to this Court's 1/28/19 OTSC, nor have they otherwise appeared in this action.

## DISCUSSION

### I.   Default Judgment Standard

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or otherwise defend" an action.   See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b).   A defendant's default ordinarily constitutes an admission of all well-pleaded factual allegations in the complaint except those relating to damages.   See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).   This principle is, however, subject to several exceptions and limitations.   First, "a fact is not well-pleaded if

it is inconsistent with other allegations of the complaint[,] or is contrary to uncontroverted material in the file of the case." Chuchuca v. Creative Customs Cabinets Inc., No. 13-CV-2506 (RLM), 2014 WL 6674583, at *5 (E.D.N.Y. Nov. 25, 2014) (citations and quotations omitted). Additionally, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief. See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016) (citing Stein v. Valentine & Kebartas, Inc., No. 10-CV-2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").

Finally, the damages amount pleaded by a plaintiff is not deemed to be established by the default; rather, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). This inquiry may be accomplished by evaluating and analyzing affidavits and other documentary evidence submitted by the plaintiff in regard to the extent of damages sought. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015); Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether or not to hold an evidentiary hearing. See Action S.A. v. Marc Rich & Co. Inc.,

951 F.2d 504, 508 (2d Cir. 1991).   The moving party is entitled to all reasonable inferences

from the evidence it offers.   See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65.

## II.      Service of the Complaint

### A.      Service on the Individual Defendants

Pursuant to Rule 4 of the Federal Rules of Civil Procedure ("FRCP"), service on an

individual may be effected by:

> (1) following state law for serving a summons in an action brought in courts of
> general jurisdiction in the state where the district court is located or where
> service is made; or
> (2) doing any of the following: (A) delivering a copy of the summons and of the
> complaint to the individual personally; (B) leaving a copy of each at the
> individual's dwelling or usual place of abode with someone of suitable age
> and discretion who resides there; or (C) delivering a copy of each to an agent
> authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Under the law of New York, the forum state herein, service on a natural person may be

accomplished "by delivering the summons within the state to a person of suitable age and

discretion at the actual place of business, dwelling place or usual place of abode of the person

to be served and by . . . mailing the summons by first class mail to the person to be served at

his or her actual place of business[.]"   N.Y. C.P.L.R. § 308(2).[4]

Plaintiff purported to serve defendants Salal Sahid, Wessein Sahid, and John Does 1

---

[4]   "New York courts have construed actual place of business to include (1) a place where the
defendant regularly transacts business, or (2) an establishment that the defendant owns or
operates, where there is a clear identification of the work performed by her with that place of
business."   Velez v. Vassallo, 203 F.Supp.2d 312, 325 (S.D.N.Y. 2002) (collecting cases)
(internal quotations omitted).

and 2 by leaving copies of the summons and Complaint with defendant Salal Sahid at 66 Lorraine Street, Brooklyn, New York, Red Hook's address.   See Affidavits of Service, DE #8, #9, #10, #11.   Service appears to have been properly effectuated on defendant Salal Sahid, who was personally served.   See Fed. R. Civ. P. 4(e)(2)(A).

In contrast, plaintiff has not established proper service on defendants Wessein Sahid or the John Doe defendants.[5]   The affidavits of service as to those three defendants state that the summons and Complaint were left with co-defendant Salal Sahid, an "Authorized Agent." See Affidavits of Service, DE #8, #9, #10.   However, plaintiff provides no evidence that Salal Sahid was in fact their authorized agent.   Prado v. City of New York, No. 12-CV-4239 (RJS), 2015 WL 5190427, at *3 (S.D.N.Y. Sept. 3, 2015) ("a party must present facts and circumstances showing the proper relationship between the defendant and its alleged agent in fact existed—[i]n absence of actual appointment, service of process is ineffective.") (internal quotations omitted).   Therefore, Rule 4(e)(2)(C) has not been satisfied.

Nor has plaintiff established proper service under New York State law.   Rule 318 of New York's C.P.L.R. provides that "[a] person may be designated by a natural person . . . as an agent for service in a writing, executed and acknowledged in the same manner as a deed,

---

[5]  It is unclear whether plaintiff is even seeking default judgment against defendants John Doe 1 and John Doe 2.   Compare Pl. Mot. at 1 and Declaration in Support of Plaintiff's Motion for Default Judgment (May 14, 2018) ("5/14/18 Counsel Decl.") ¶ 2, DE #17 (seeking default judgment against all five defendants, including John Doe defendants) with Pl. Mem. at 1 and 2/11/19 Ortiz Decl. ¶ 8 (seeking default judgment against three identified defendants).   In any event, as the John Doe defendants were not included in the Clerk of the Court's entry of default, a default judgment may not be entered against them.   See Asfaw v. BBQ Chicken Don Alex No. 1 Corp., 14-CV-5665 (CBA)(RML), 2016 WL 1276417, at *3 (E.D.N.Y. Mar. 30, 2016) (citing Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981)).

with the consent of the agent endorsed thereon."  N.Y. C.P.L.R. 318.  Again, plaintiff

provides no evidence to substantiate that co-defendant Salal Sahid was indeed an authorized

agent who could accept service on behalf of Wessein Sahid or the unidentified defendants.

Finally, to the extent plaintiff purported to serve them under Section 308 of the

C.P.L.R., that service is also defective.   Section 308 provides that service of process may be

made by delivering the summons within the state to "a person of suitable age and discretion at

the actual place of business, dwelling place or usual place of abode of the person to be served

and by . . . mailing the summons by first class mail to the person to be served at his or her

actual place of business in an envelope bearing the legend 'personal and confidential[.]'"

N.Y. C.P.L.R. § 308.   Here, plaintiff delivered the summons and Complaint to the three

defendants' purported principal place of business, and left copies with co-defendant Salal

Sahid.   However, the affidavits of service do not indicate that copies of the same were

thereafter mailed to defendant Wessein Sahid or the John Doe defendants.   See Affidavits of

Service, DE #8, #9, #10.

Despite having been notified of the defect as to defendant Wessein Sahid, see 5/13/19

OTSC, plaintiff has not demonstrated proper service of process on him.   As plaintiff failed to

serve Wessein Sahid before the expiration of the court-imposed deadline—let alone within the

90-day period specified by Rule 4(m) of the FRCP—this Court respectfully recommends that

the District Court *sua sponte* dismiss the claims against defendant Wessein Sahid for lack of

proper service of process.   Similarly, because the John Doe defendants were never properly

served, they cannot be said to have defaulted.   See Asfaw v. BBQ Chicken Don Alex No. 1

9

Corp., No. 14-CV-5665 (CBA)(RML), 2016 WL 1276417, at *3 (E.D.N.Y. Mar. 30, 2016);

accord Calle v. Yoneles Enters. Inc., No. 16-CV-1008 (NGG), 2017 WL 6942652, at *9

(E.D.N.Y. Oct. 24, 2017), adopted, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018).   Plaintiff's

claims against John Does 1 and 2 should therefore be dismissed under Rule 4(m) of the FRCP.

See generally Asfaw, 2016 WL 1276417, at *4 & n.4.

### B.   Service on the Corporate Defendants

Rule 4 of the FRCP permits service of a corporation in a manner authorized by the law

of the forum state.   See Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).   New York law provides for

service of process on a corporation through New York's Secretary of State.   See N.Y. Bus.

Corp. Law § 306(b)(1).

Plaintiff served Red Hook through the Secretary of State.   See Corp. Aff. of Service.

Accordingly, plaintiff properly served Red Hook.

## III.   Liability

### A.   The Fair Labor Standards Act—Legal Principles

#### 1.   Employer/Employee Relationship

The FLSA mandates that "no employer shall employ any of his employees . . . for a

workweek longer than forty hours unless such employee receives compensation for his

employment in excess [of 40 hours] at a rate not less than one and one-half times the regular

rate at which he is employed."   29 U.S.C. § 207(a)(1).   In addition, the FLSA sets forth a

minimum hourly wage that an employer must pay its employees.   See id. § 206(a)(1)(C).

The FLSA defines an "employer" to include "any person acting directly or indirectly in the

interest of an employer in relation to an employee . . . ."  Id. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work").   An employee may bring suit against his employer under the FLSA where the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA.   Indeed, the regulations promulgated by the United States Department of Labor under the FLSA recognize that there may be joint liability for FLSA violations.   See 29 C.F.R. § 791.2 ("A single individual may stand [as an employee] to two or more employers at the same time under the Fair Labor Standards Act . . . ."); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA).   In order to determine whether an employer-employee relationship exists for FLSA purposes, courts have adopted an "economic realities" test, "grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'"   Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (citing Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961); Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)).

The Second Circuit has identified four factors that a court should address in applying, on a case-by-case basis, the economic realities test: "whether the alleged employer (1) had the

11

power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984) (internal quotations and citations omitted); see id. at 12 n.1. Even in the absence of "formal control," an entity or individual may constitute an "employer" if that party had "functional control" of the employee. See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 526 (S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 71-72), vacated and remanded on other grounds, 811 F.3d 528 (2d Cir. 2016). In accordance with these principles, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation . . . ." Moon v. Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (quotations and citation omitted); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). Consequently, joint employers, including corporate officers with the "power to control," may be held jointly and severally liable for FLSA violations. See Moon, 248 F.Supp.2d at 236-37 (citations omitted).

### 2.   Violations of the FLSA

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)). In order to establish liability under the FLSA for unpaid minimum wages or overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of

12

that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham

Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d

80, 87 (2d Cir. 2003)).   Employers that violate these FLSA mandates "shall be liable to the

employee or employees affected in the amount of their unpaid minimum wages, or their unpaid

overtime compensation, as the case may be, and in an additional equal amount as liquidated

damages." 29 U.S.C. § 216(b).   The FLSA contains a two-year statute of limitations for

non-willful violations, and, for willful violations, a three-year limitations period from the date

that the claim accrued. See 29 U.S.C. § 255(a).

### B.  New York Labor Law—Legal Principles

The NYLL is quite similar to the FLSA in that it requires employers to pay a minimum

hourly wage to employees,[6] as well as overtime compensation.  See N.Y. Lab. Law § 650 *et*

---

[6]  During the periods relevant to this case, the minimum wage required under the NYLL was
higher than the rate mandated under the FLSA.   The New York City minimum wage rate was
$9.00 during 2016 and $10.50 during 2017; the federal minimum wage rate was $7.25.   See
29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1).

The Court notes that plaintiff's Damages Chart assumes a minimum wage rate of $11.00 for
the period beginning 12/31/2016, see Damages Chart at 1, which corresponds to "large
employers" in New York City.   See N.Y. Lab. Law § 652(1)(a)(i).   Plaintiff provided no
information as to the number of employees employed by defendants.   Large employers, i.e.,
those who employ eleven or more employees, and small employers, i.e., those who employ ten
or fewer employees, are treated differently under the NYLL.   Compare N.Y. Lab. Law
§ 652(1)(a)(i) with N.Y. Lab. Law § 652(1)(a)(ii).   In the absence of information as to the size
of an employer's workforce, courts apply the rate for small employers.   See, e.g.,
Reyes v. Lincoln Deli Grocery Corp., No. 17-CV-2732 (KBF), 2018 WL 2722455, at *7
(S.D.N.Y. June 5, 2018) (applying small-employer rate where "Complaint [was] completely
silent as to how many people [defendant] employ[ed]" and, as such, "there [was] no
evidentiary basis for the Court to calculate damages based on the higher rate."), order
clarified, 2018 WL 3105070 (S.D.N.Y. June 25, 2018); accord Toribio v. Abreu, No. 18-CV-

*seq.*; Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all respects.").   Indeed, like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."   See Vargas v. Jet Peru-Courier Corp., No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018) ("[T]he analysis of the employment relationship under both statutes is based on the same factors."), adopted, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018); Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA."); Sethi v. Narod, 974 F.Supp.2d 162, 188 (E.D.N.Y. 2013) (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)).

Unlike the FLSA, the NYLL requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage, . . . ; the regular pay day . . . ; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay."   N.Y. Lab. Law § 195(1)(a).   Moreover, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions;

---

1827 (ARR), 2018 WL 6363925, at *6 n.3 (E.D.N.Y. Nov. 15, 2018), adopted, 2018 WL 6335779 (Dec. 4, 2018).   In this case, the small-employer versus large-employer distinction is immaterial, because plaintiff's regular hourly rate of $12.00 exceeded the higher of the two rates and he thus does not allege a minimum wage violation under the NYLL.

allowances, if any, claimed as part of the minimum wage; and net wages."   N.Y. Lab. Law § 195(3).

Several NYLL regulations additionally provide for "spread of hours" compensation. "[S]pread of hours is the length of the interval between the beginning and end of an employee's workday."   N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6; see id. § 142-2.4. "On each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."   Id. § 146-1.6(a); see id. § 142-2.18.   Pursuant to section 142-2.4, and consistent with a 2006 opinion letter issued by the New York State Department of Labor, employees who earn in excess of the minimum wage ordinarily are not entitled to spread-of-hours compensation.   See Singh v. Patel, No. 12-CV-3204 (SJF)(ETB), 2013 WL 2190153, at *2 (E.D.N.Y. May 16, 2013); Morris v. Alle Processing Corp., No. 08-CV-4874 (JMA), 2013 WL 1880919, at *11 (E.D.N.Y. May 6, 2013).   A more recent regulation creates an exception to that rule; under section 146-1, the spread-of-hours mandate applies to "all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay."   Id. § 146-1.6(d).

## C.   Application of the Law to the Facts

Having set forth the relevant legal standards under the FLSA and NYLL, the Court next considers whether the factual allegations asserted in plaintiff's First Amended Complaint, most of which are deemed to be admitted as a result of defendants' default, are sufficient to warrant a finding of liability against each defendant.   See Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137.

15

### 1.    Defendants' Liability

Plaintiff has sufficiently alleged that defendants were his employers for purposes of the

FLSA[7] and NYLL.   See generally FAC ¶¶ 22-29.   Plaintiff has established that the corporate

defendant owned and operated the deli where he worked.   See id. ¶¶ 2, 3, 22, 24, 26, 27.

With respect to Salal Sahid, plaintiff's First Amended Complaint alleges that he is an "owner,

officer, and/or agent of [Red Hook]."   See id. ¶ 18.[8]   The allegations contained in the First

Amended Complaint thus would appear to be sufficient to find that defendants Red Hook and

Salal Sahid were plaintiff's joint "employers" under the FLSA and NYLL.   See, e.g.,

Vargas, 2018 WL 1545699, at *5-6; Peralta v. M & O Iron Works, Inc., No. 12-CV-3179

(ARR)(RLM), 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

### 2.    Overtime

The First Amended Complaint alleges that plaintiff regularly worked overtime hours

each week, working twelve-hour days during the period from August 22, 2016 through about

---

[7]   Plaintiff brings his FLSA claims pursuant to theories of both "enterprise coverage" and "individual coverage."   See FAC ¶¶ 30, 31, 36.   Although the FAC's allegations concerning the annual gross volume of business done (i.e., in excess of $500,000) are quite sparse, as are its allegations of plaintiff's handling of goods that moved in commerce, courts addressing motions for default judgment have found similar conclusory but uncontested allegations to be sufficient to satisfy the interstate commerce requirement.   See Vargas, 2018 WL 1545699, at *5-6; Reyes v. Art Tek Design, Ltd., No. 16-CV-5168 (ADS)(AYS), 2018 WL 614980, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); Vilchis v. Seoul Sisters, Inc., No. 15-CV-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 33-34 (E.D.N.Y. 2015).

[8]   As Wessein Sahid was not properly served, see supra pp. 8-9, the Court need not decide whether the allegations against him are sufficient.

August 2017, and nine-hour days during the period from approximately September 2017 through October 25, 2017. <u>See</u> FAC ¶¶ 38-40; <u>see also</u> 2/11/19 Ortiz Decl. ¶¶ 3, 4. Plaintiff alleges that defendants did not pay him the requisite premium for the overtime hours worked in either of these periods. <u>See</u> FAC ¶¶ 42-45; <u>see also</u> 2/11/19 Ortiz Decl. ¶ 6. Plaintiff has sufficiently alleged claims against defendants Red Hook and Salal Sahid for deficiencies in his overtime pay under the FLSA and NYLL.

### 3.    New York's Spread-of-Hours Provisions

Plaintiff has failed to state a claim for violating the NYLL's spread-of-hours provisions. By its express terms, section 146-1.6, the spread-of-hours provision on which plaintiff relies, <u>see</u> FAC ¶ 73, is limited to employees "in restaurants and all-year hotels . . . ." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.[9] Plaintiff, however, worked at neither a restaurant nor an all-year hotel; rather, plaintiff was employed as a "deli worker" (FAC ¶¶ 4, 32) at a "deli" (FAC ¶ 2)—named in the pleading as "Red Hook Deli and Grocery 2015 Corp." (FAC ¶ 1). As the nature of the business is not further described in the pleading—or even in plaintiff's evidentiary submissions—plaintiff has not sufficiently alleged that Red Hook constitutes a "restaurant," within the meaning of section 146-1.6(d). Thus, plaintiff's Third Cause of Action (for spread-of-hours compensation) should be dismissed.

---

[9]   As noted above, another New York regulation provides for spread-of-hours compensation for other kinds of workers, but only to the extent that such workers are not paid in excess of the minimum wage. <u>See</u> <u>supra</u> p. 15. Plaintiff, who was paid in excess of the minimum wage, <u>see</u> <u>supra</u> p. 13 n.6; Declaration of Luis Antonio Ortiz (May 14, 2018) ("5/14/18 Ortiz Decl.") ¶¶ 16, 17, DE #17-9, thus does not rely upon section 142-2.4 in his spread-of-hours claim, <u>see</u> FAC ¶ 73 (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6).

### 4.    Wage Theft Prevention Act

The FAC sufficiently alleges that defendants failed to provide the wage notices required by section 195(1)(a) of the NYLL.   See FAC ¶ 50.   Additionally, the FAC sufficiently alleges that defendants failed to provide plaintiff with a statement with every payment of wages, in violation of section 195(3) of the NYLL.   See FAC ¶ 49.   Therefore, plaintiff has properly stated claims for violations of the WTPA.   See Vazquez v. 142 Knickerbocker Enter., Corp., No. 13-CV-06085 (LDH)(PK), 2018 WL 1401798, at *2 (E.D.N.Y. Mar. 20, 2018).

## IV.    Damages

Although the Court must accept as true the well-pleaded, uncontroverted allegations contained within plaintiff's First Amended Complaint as to defendants' liability, it need not give the same deference to plaintiff's allegations regarding damages.   See supra p. 6. Instead, the Court must undertake an inquiry to determine the extent of damages to a "reasonable certainty," see Credit Lyonnais Secs., 183 F.3d at 155, by evaluating and analyzing affidavits and other documentary evidence submitted by plaintiff, see Fustok, 873 F.2d at 40.

Under both the FLSA and NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him." Rodriguez v. Queens Convenience Deli Corp., No. 09-CV-1089 (KAM)(SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011). Where, as here, defendants, having defaulted, failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing how many hours he or she worked 'by relying solely on his or her recollection.'"   Id. at *2 (quoting Rivera v. Ndola Pharm. Corp.,

497 F.Supp.2d 381, 388 (E.D.N.Y. 2007)); see Vilchis, 2016 WL 6106478, at *5. Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate.   See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y. 2012).

The Court has considered plaintiff's documentary submissions and declarations.   In light of defendants' default and failure to respond to any of plaintiff's submission, plaintiff's evidence on damages stands uncontroverted.   See Piedra v. Ecua Rest., Inc., No. 17-CV-3316 (PKC)(CLP), 2018 WL 1136039, at *11 (E.D.N.Y. Jan. 31, 2018), adopted and modified on other grounds, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018).   "The Court concludes that plaintiff's declarations and submissions as to the hours worked, rate of pay received, and other damages are sufficient bases upon which to calculate and recommend an award of damages."   Id.

## A.   Overtime Claims

Before determining the damages to recommend for the overtime claims asserted, the Court must address threshold issues concerning the number of hours plaintiff worked per week, plaintiff's hourly rates of pay and the number of weeks he worked.

### 1.   Hours Worked Per Week

Plaintiff alleges in the FAC, and confirms in his declarations, that he regularly worked overtime hours and was paid a flat rate in cash.   For example, from August 22, 2016 through approximately August 2017, plaintiff worked seven days per week, twelve hours per day, for a total of 84 hours per work week.   He was paid "$12 per scheduled hour[,]" see 5/14/18 Ortiz

Decl. ¶ 16, for a fixed weekly salary of $1,008 in cash, <u>see</u> FAC ¶¶ 40, 41, 42; <u>see also</u> 2/11/19 Ortiz Decl. ¶¶ 3, 5.   From about September 2017 through October 25, 2017, plaintiff worked seven days per week, averaging 63 hours per work week, and received "$12 per scheduled hour," <u>see</u> 5/14/18 Ortiz Decl. ¶ 17, for a fixed daily weekly of $756 in cash, <u>see</u> FAC ¶¶ 40, 43; <u>see also</u> 2/11/19 Ortiz Decl. ¶ 4.

**2.    Regular Hourly Rate of Pay and Overtime Rate**

Although the FAC refers to plaintiff's receipt of a fixed weekly salary, <u>see</u> FAC ¶¶ 42, 43, plaintiff's pleading and evidentiary submissions clarify that plaintiff's regular hourly rate—for all hours worked, including overtime hours—was "$12 per scheduled hour[,]" 5/14/18 Ortiz Decl. ¶¶ 16, 17; <u>see</u> FAC ¶¶ 42, 43 (alleging that defendants paid plaintiff "$12 per regular and overtime hour.").   In addition, plaintiff's damages calculations use an hourly rate of $12.00 for both of the relevant time periods.   <u>See</u> Damages Chart.

This Court, like plaintiff, predicates its damages calculation on a $12.00 hourly rate, and an overtime rate of one-and-one-half times the regular rate, or $18.00.   The results of the Court's calculations are as follows:

| Weeks | Regular Rate of Pay (for 40 hours) | OT Earned Per Week | Paid Each Week | Owed For Each Week | Damages |
|---|---|---|---|---|---|
| 8/22/2016 – 12/30/2016 (19 weeks at 84 hours) | $ 480.00 ($12/hr.) | $ 792.00 ($18/hr.) | $ 1,008.00 | $ 264.00 | $ 5,016.00 |
| 12/31/2016 – 8/31/2017 (35 weeks at 84 hours) | $ 480.00 ($12/hr.) | $ 792.00 ($18/hr.) | $ 1,008.00 | $ 264.00 | $ 9,240.00 |
| 9/1/2017 – 10/25/2017 (8 weeks at 63 hours) | $ 480.00 ($12/hr.) | $ 414.00 ($18/hr.) | $ 756.00 | $138.00 | $   1,104.00 |
| | | | | Total: | $   15,360.00 |

Therefore, to compensate plaintiff for defendants' overtime violations, this Court recommends an award of $15,360.00 from defendants Red Hook and Salal Sahid, jointly and severally.

**B.     Liquidated Damages**

Plaintiff requests liquidated damages under the FLSA or NYLL.   See Pl. Mem. at 10-11.   The FLSA provides that an employer who violates the overtime compensation requirements is liable for "an additional equal amount as liquidated damages," unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.   See 29 U.S.C. §§ 216(b), 260.   As a result of defendants' default in this action, the record is devoid of evidence of their good faith or reasonable belief.   See Peralta, 2014 WL 988835, at *10.   Therefore, plaintiff is entitled to an award of liquidated damages under the FLSA.

The current version of the NYLL similarly authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its

underpayment of wages was in compliance with the law . . . ."   N.Y. Lab. Law § 663(1).

Liquidated damages under the NYLL are likewise calculated at 100 percent of the unpaid

wages due to a prevailing plaintiff.   See id.

Because "there are no meaningful differences" between the FLSA and NYLL liquidated

damages provisions, the Second Circuit has interpreted the two statutes "as not allowing

duplicative liquidated damages for the same course of conduct."   Rana v. Islam, 887 F.3d

118, 123 (2d Cir. 2018).

Applying 100 percent liquidated damages as required, the Court recommends awarding

plaintiff $15,360 in liquidated damages for unpaid overtime wages.   See Calle, 2017 WL

6942652, at *15; Fermin, 93 F.Supp.3d at 48.

### C.      Statutory Damages Under the WTPA

Under the WTPA, plaintiff is entitled to "$50 per workday after February 27, 2015, up

to $5,000 for failure to provide a wage notice."   Gil v. Frantzis, No. 17-CV-1520

(ARR)(SJB), 2018 WL 4522094, at *10 (E.D.N.Y. Aug. 17, 2018), adopted as modified, No.

2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018).   Moreover, plaintiff is also entitled to "$250

per workday for each workday after February 27, 2015, up to $5,000 for failure to provide a

wage statement."   Id.

Here, plaintiff worked for defendants beginning August 22, 2016 until around October

25, 2017, and never received a proper wage notice or statement.   See FAC ¶¶ 77, 80; see also

5/14/18 Ortiz Decl. ¶¶ 22-24.   Plaintiff worked for defendants for 429 workdays and, but for

the $5,000 statutory maximum, would be entitled to recover $21,450 (429 x $50) for wage

notice violations under section 195(1). Plaintiff is also entitled to recover the maximum penalty of $5,000 from defendants (429 days x $250 = $107,250), jointly and severally, for failure to provide wage statements. See Lopez v. SQ Brooklyn, Inc., No. 17-CV-4191 (RJD)(LB), 2018 WL 6381495, at *5 (E.D.N.Y. Dec. 3, 2018).

Therefore, the Court recommends that the District Court award plaintiff a total of $10,000 from defendants Red Hook and Salal Sahid, jointly and severally, for defendants' violations of the WTPA's wage notice and statement requirements.

### D. Interest

#### a. Prejudgment Interest

Plaintiff requests prejudgment interest pursuant to New York law. See Pl. Mem. at 8. "Although it is well settled that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, NYLL permits the award of both liquidated damages and pre-judgment interest." Lopez v. Royal Thai Plus, LLC, No. 16-CV-4028 (NGG)(SJB), 2018 WL 1770660, at *12 (E.D.N.Y. Feb. 6, 2018) (quotations and citations omitted), adopted, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). Prejudgment interest is available for unpaid overtime wages under the NYLL, but not for amounts awarded under the WTPA, see Martinez v. Alimentos Saludables Corp., 16-CV-1997 (DLI)(CLP), 2017 WL 5033650, at *24 (E.D.N.Y. Sept. 22, 2017), or as liquidated damages, see Fermin, 93 F.Supp.3d at 49.

"There is a split in this Circuit as to whether prejudgment interest should be allowed on unpaid wages which are owed under both the FLSA and NYLL." Thomas v. Good Vision Taste Inc., No. 17-CV-6084 (FB)(LB), 2018 WL 4268909, at *7 (E.D.N.Y. Apr. 17, 2018)

(quotations omitted), adopted and modified on other grounds, 2018 WL 4265868 (E.D.N.Y. Sept. 5, 2018).   Courts that have awarded prejudgment interest in such cases have reasoned that plaintiffs "should be permitted to recover under the statute that provides the greatest relief, which in this case is the NYLL."   Santana v. Latino Express Rests., Inc., 198 F.Supp.3d 285, 294 (S.D.N.Y. 2016) (citations and quotations omitted).   This Court agrees.

"Under New York law, prejudgment interest is calculated at a rate of 9% per annum." Jiaren Wei v. Lingtou Zhengs Corp., No. 13-CV-5164 (FB)(CLP), 2015 WL 739943, at *17 (E.D.N.Y. Feb. 20, 2015) (citing N.Y. C.P.L.R. § 5001).   Where "damages were incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."   Id. (quotations omitted).   "The midpoint of the relevant period of plaintiff's employment is a reasonable intermediate date for purposes of calculating prejudgment interest."   Asfaw v. BBQ Chicken Don Alex No. 1 Corp., No. 14-CV-5665 (CBA)(RML), 2015 WL 13731362, at *7 (E.D.N.Y. Aug. 26, 2015).

The amount of unpaid overtime wages due to plaintiff under the NYLL, from defendants Red Hook and Salal Sahid, is $15,360.   The relevant period of employment for those wages is August 22, 2016 through October 25, 2017.   The midpoint between those dates is March 24, 2017.   The Court recommends that prejudgment interest be awarded at a daily rate of $3.79 from March 24, 2017 until the day final judgment is entered against defendants.[10]

---

[10] ($15,360 at 9% = $1,382.40)
($1,382.40 / 365 days per year = $3.79).

### E.      Attorney's Fees

Plaintiff seeks $3,879 in attorney's fees for the time expended by attorney Michael Faillace from the firm Michael Faillace & Associates, P.C. (the "Firm").   See Pl. Mem. at 11; see also Red Hook Billing, DE #17-11.

### 1.      Applicable Legal Standard

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of reasonable attorney's fees.   See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).   Plaintiff bears the burden of proving the reasonableness of the fees sought.   See Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).   In considering an application for attorney's fees, the Court must first determine the presumptively reasonable fee.   See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).   This presumptively reasonable fee—or lodestar[11]—is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."   Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citing Arbor Hill, 522 F.3d at 190) (quotations omitted).

Courts can and should exercise broad discretion in determining a reasonable fee award. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's

---

[11]   The lodestar is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate.   See Arbor Hill, 522 F.3d at 183 ("The fee—historically known as the 'lodestar'—to which [ ] attorneys are presumptively entitled is the product of hours worked and an hourly rate.").

"considerable discretion").    The method for determining reasonable attorney's fees in this

Circuit is based on a number of factors, such as the labor and skill required, the difficulty of

the issues, the attorney's customary hourly rate, the experience, reputation and ability of the

attorney, and awards in similar cases.    See Arbor Hill, 522 F.3d at 186 n.3, 190.    In

particular, when assessing an attorney's requested hourly rate, courts typically consider other

rates awarded in the district in which the reviewing court sits.    This is known as the "forum

rule."    See Simmons, 575 F.3d at 174-75 (recounting history of the forum rule); see also

Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in

most cases hire counsel from within his district, or at least counsel whose rates are consistent

with those charged locally.").

          Once the Court determines the reasonable hourly rate, it must multiply that rate by the

number of hours reasonably expended, in order to determine the presumptively reasonable fee.

See Arbor Hill, 522 F.3d at 190.    With very limited exceptions, "contemporaneous time

records are a prerequisite for attorney's fees in this Circuit."    N.Y. State Ass'n for Retarded

Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).    The Court must review these

time records and the hours an attorney billed in order to determine the reasonableness of such

and, in doing so, should examine the value of the work product and "'exclude excessive,

redundant or otherwise unnecessary hours.'"    Concrete Flotation Sys., Inc. v. Tadco Constr.

Corp., No. 07-CV-319 (ARR)(VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010)

(quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 2009)), adopted, 2010 WL

2539661 (E.D.N.Y. June 17, 2010); see Hensley, 461 U.S. at 434; Lunday v. City of Albany,

26

42 F.3d 131, 133 (2d Cir. 1994).   "[A] fee award should be based on scrutiny of the unique

circumstances of each case . . . ."   McDaniel v. Cty. of Schenectady, 595 F.3d 411, 426 (2d

Cir. 2010) (citations and quotations omitted).

### 2.    Reasonable Hourly Rate

Plaintiff seeks fees calculated at an hourly rate of $450 for Faillace's time.

"Reasonable hourly rates for wage and hour cases in this District have generally been set at

approximately $300.00 to $400.00 for partners and $100.00 to $300.00 for associates."   Xi

Qun Xu v. JNP Bus Serv. Inc., No. 16-CV-245 (AMD)(ST), 2018 WL 1525799, at *10

(E.D.N.Y. Feb. 26, 2018) (collecting cases), adopted in part, rejected in part on other

grounds, 2018 WL 1525662 (E.D.N.Y. Mar. 28, 2018).   Consistent with recent fee awards

for Faillace's services in similar cases, this Court respectfully recommends an hourly rate of

$375 for Faillace, who is the Firm's managing partner.   See Alimentos Saludables Corp., at

*27 (collecting cases); see also 5/14/18 Counsel Decl. ¶ 66.   The requested rate of $450 is

particularly unreasonable in this case, where the Firm's time records reflect that Faillace spent

most of his time performing tasks that could have been handled by junior associates (e.g.,

drafting the complaint) or even paralegals (e.g., filing complaint, entering service costs, and

scanning and docketing affidavits of service).   See Winkler v. Metro. Life Ins. Co., No.

03 Civ 9656 (SAS), 2006 WL 2347826, at *2 (S.D.N.Y. Aug. 10, 2006) ("a failure to

delegate work to junior, less expensive attorneys may be grounds for reducing an award

of attorney's fees.") (quotations omitted); see also Red Hook Billing.

27

### 3.    Reasonable Number of Hours

Counsel claims that he spent 8.62 hours on this matter, and has submitted time records to substantiate the time charges.    See Red Hook Billing.    The overall time spent is not unreasonable, particularly at the reduced rate of $375.

Applying the reduced hourly rate ($375) to the number of hours reflected in counsel's billing records (8.62 hours), the Court recommends awarding attorney's fees in the amount of $3,232.50.

### F.    Costs

Plaintiff further requests an award of $1,040 for costs incurred in filing fees and effecting service of process.    See Pl. Mem. at 11; see also Red Hook Billing.   As a general matter, a prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendant, see 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), as long as those costs are tied to "[i]dentifiable, out-of-pocket disbursements," see Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp., No. 13-CV-3061 (JGK), 2014 WL 2624759, at *8 (S.D.N.Y. June 10, 2014) (quoting Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir. 1987)).

Plaintiff's payment of the $400 court filing fee is reflected on the docket (DE #1) and is recoverable.    See Shalto v. Bay of Bengal Kabob Corp., No. 12-CV-920 (KAM)(VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013).

The remaining $604 consists of process server fees, of which $262.60 is attributed to service on Salal Sahid.    See Red Hook Billing.   Plaintiff proffers no documentation whatsoever to substantiate these fees, and the $262.60 amount attributable to Salal Sahid far

28

exceeds the usual cost of service of process.   See Gil, 2018 WL 4299987, at *4 (denying costs

relating to process server fees in the absence of supporting documentation and agreeing with

magistrate judge that, in any event, "such fees must be within the range of costs that would

have been incurred had the United States Marshal Service effected service, which is currently

$65 per hour.").   Therefore, this Court recommends that plaintiff's request for $604 in

process service fees be denied in its entirety.   See id.; Shalto, 2013 WL 867420, at *2; see

also First Horizon Bank v. Moriarity-Gentile, No. 10-CV-0289 (KAM)(RER), 2012 WL

4481509, at *6 (E.D.N.Y. Aug. 17, 2012) (recommending reduction where documentary

evidence did not justify amount of service fees requested), adopted, 2012 WL 4481453

(E.D.N.Y. Sept. 27, 2012).[12]

The Court, therefore, respectfully recommends awarding $400 in court filing fees.

## CONCLUSION

For the reasons explained above, the Court recommends that the District Court (1) *sua*

*sponte* dismiss (a) all claims against defendants Wessein Sahid, John Doe 1 and John Doe 2, on

account of ineffective service of process, and (b) the Third Cause of Action, for spread-of-

---

[12]   In any event, even if, despite the absence of supporting documentation, plaintiff should
nevertheless be awarded a reasonable amount for service on Salal Sahid and on Red Hook, he
should not be awarded the cost of serving defendant Wessein Sahid, against whom he is not
entitled to default judgment.   See Lu Nan Fan v. Jenny & Richard's Inc., No. 17-CV-6963
(WFK), 2019 WL 1549033, at *16 (E.D.N.Y. Feb. 22, 2019) (disallowing recovery of costs
attributable to defective service on co-defendant) adopted, 2019 WL 1547256 (E.D.N.Y. Apr.
9, 2019); Reyes Hernandez v. Delta Deli Mkt. Inc., No. 18-CV-375 (ARR)(RER), 2019 WL
643735, at *10 (E.D.N.Y. Feb 12, 2019) (where the court concluded that claims against all but
one defendant should be dismissed, the remaining defendant was "only responsible for the
costs of its own service [of process], and not the service on the other defendants") (internal
quotations omitted).

hours violations; and (2) grant a default judgment against defendants Red Hook and Salal Sahid, jointly and severally, in the amount of $44,352.50, consisting of $15,360 in unpaid overtime wages, $15,360 in liquidated damages, $10,000 in statutory damages, $3,232.50 in attorney's fees, and $400 in costs; the Court also recommends awarding prejudgment interest on $15,360, in an amount to be calculated by the Clerk of Court, by multiplying $3.79 by the number of days from March 24, 2017 until the day final judgment is entered.

Any objections to the recommendations contained herein must be filed with Judge Mauskopf on or before **July 1, 2019**.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*).

The Clerk of the Court is respectfully requested to docket this opinion into the ECF court file and to send copies, via Federal Express, to each defendant at the following addresses:

Red Hook Deli and Grocery 2015 Corp.
66 Lorraine Street
Brooklyn, NY 11231

Salal Sahid
66 Lorraine Street
Brooklyn, NY 11231

Wessein Sahid
66 Lorraine Street
Brooklyn, NY 11231


**SO ORDERED.**

**Dated:**   **Brooklyn, New York**
**June 12, 2019**


/s/  *Roanne L. Mann*

**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

31